## McIlvain's Estate.

*Wills—Revocation by after-born children—Act of June 7, 1917.*

1. Under section 21 of the Wills Act of June 17, 1917, P. L. 403, afterborn children are not disinherited by an express provision giving all real and personal property to the widow, notwithstanding the birth of any children born thereafter, it being the testator's expressed intention to disinherit all his children in favor of his wife if she survived him, whether such children were born before or after the execution of the will.

2. Owing to the difference in language between the Pennsylvania and New Jersey Wills Acts, the New Jersey authorities construing the section corresponding to our section 21 have no application.

Exceptions to adjudication. O. C. Phila. Co., Jan. T., 1893, No. 514.

The question involved arose upon the distribution of the share of the estate of Robert Biddle, 2nd, in one-sixth of the balance of the third account of J. Gibson McIlvain, Hugh McIlvain and Charles M. Biddle, trustees under the will of Martha G. McIlvain, deceased, as filed by Hugh McIlvain, surviving trustee. .

Under the will of Martha G. McIlvain, deceased, her daughter, Hannah M. Biddle, wife of Charles M. Biddle, had enjoyed the income of one-sixth of her residuary estate prior to Mrs. Biddle's death on March 31, 1905, and thereafter her husband, Charles M. Biddle, had enjoyed the income of the same share until his death on Feb. 21, 1922. They had six children, all of whom survived both their parents except Robert Biddle, 2nd, who survived his mother only and died Oct. 12, 1918, seised and possessed of an undivided one-sixth share in remainder after the decease of his father, Charles M. Biddle, in one-sixth of the *corpus* of the residuary estate of Martha G. McIlvain, deceased.

By his will, dated Feb. 16, 1913, and duly proved in Burlington County, New Jersey, the said Robert Biddle, 2nd, directed, *inter alia*, as follows:

"Second. I give, devise and bequeath to my wife Marian Scull Biddle, her heirs, executors and administrators, all of my estate, both real and personal, of whatsoever kind and wheresoever situate. And I do further order and direct that the said bequest and devise to my said wife shall take effect and be fully operative notwithstanding the birth of any children born to me hereafter. It being my intention to disinherit all or any children heretofore or hereafter born if my said wife shall survive me."

Robert Biddle, 2nd, left him surviving four children, two of whom were born after the date of execution of his said will, to wit, Richard S. Biddle, born Dec. 26, 1913, and Laura Biddle, born May 7, 1918, all of said children being still living.

Included in the balance for distribution of the trustees' account were the proceeds of sale of certain real estate sold and converted under the trustees' testamentary power of sale since the death of Robert Biddle, 2nd. The question involved was whether the after-born children had any interest in this fund.

The auditing judge (Gest, J.) said in his adjudication:

"I now pass to the consideration of the relative rights of Marian Scull Biddle, widow and devisee of Robert Biddle, 2nd, and of Robert S. Biddle and Laura Biddle, the minor children of Robert Biddle, 2nd, born after the execution of his will. I assume, in the first place, that the rights of his creditors are not involved at this date. If there are any unpaid claims, of course, Marian Scull Biddle would be responsible for them, being executrix as well as devisee. Robert Biddle, 2nd, died seised and possessed of a vested interest in

remainder, after the decease of Charles M. Biddle, in one-sixth of the trust estate of Hannah M. Biddle, composed of both real and personal estate. As to the latter, there can be no doubt, and in fact it was conceded by the learned counsel for the guardian *ad litem* of Robert S. Biddle and Laura Biddle, that the will of Robert Biddle, 2nd, was effective under the law of New Jersey to vest Marian Scull Biddle with the complete title and interest. So far as the personal estate is concerned, this will is governed by the law of New Jersey, and the statute of that state, approved April 15, 1846, being section 21 of the Wills Act, provides in terms 'that if a testator, having a child or children born at the time of making and publishing his last will and testament, shall, at his death, leave a child or children born after the making and publishing of his said last will and testament, or any descendant or descendants of such after-born child or children, the child or children so after-born, or their descendant or descendants respectively, not actually provided for by settlement nor disinherited by the said testator, shall succeed to the same portion of the father's estate as such child or children or descendants as aforesaid would have been entitled to if the father had died intestate, towards raising which portion or portions the devisees and legatees or other representatives shall contribute proportionately out of the part devised to them by the same will and testament.'

"That this statute applies to the distribution of the personal estate appears from Ehrhart's Estate, 31 Pa. Superior Ct. 120; Dent's Appeal, 22 Pa. 415; De Renne's Estate, 15 Phila. 566; Welles's Estate, 161 Pa. 218.

"Robert Biddle, 2nd, having died on Oct. 12, 1918, the proceeds of real estate converted before that date must be regarded as personalty under Simpson's Estate, 24 Dist. R. 154, and the cases therein cited, especially Lackey's Estate, 149 Pa. 7. But some of the real estate was sold since that date, as appears by the account, the proceeds being, as it seems, some $20,621.95. The real estate being situate in this State, the will of Robert Biddle, 2nd, must be construed in accordance with our law. See Paul's Estate, 26 Dist. R. 1011, where the subject is discussed. The question is thus squarely presented whether the after-born children of Robert Biddle, 2nd, are entitled to share in the proceeds of the real estate under our Wills Act of June 7, 1917, § 21, P. L. 403, which differs in its phraseology from the New Jersey statute above quoted, its language referring in terms to 'a child or children not provided for in such will.'

"Under the common law which we inherit from England, the subsequent birth of a child did not revoke a will previously made, nor, indeed, did the subsequent marriage of the testator, but the marriage and the birth of a child conjointly had that effect, these circumstances producing such a total change in the testator's situation as to lead to a presumption that he could not intend his previous testamentary disposition to remain unchanged. The law as to after-born children was altered, however, in Pennsylvania, by the Act of Feb. 4, 1748-49, § 5, 5 Stat. at L. 64, which provided that when a testator should afterwards marry or have a child or children 'not named in any such will,' the testator should, so far as regards such child or children, be deemed to die intestate, etc. By the Act of March 23, 1764, § 4, 3 Sm. Laws, 160, note, 6 Stat. at L. 342, there were substituted for the words 'not named in any such will' the words 'not provided for in any such will,' and this act was substantially re-enacted by the Acts of April 19, 1794, § 23, 3 Sm. Laws, 152, and April 8, 1833, § 15, P. L. 251, 4 Purd. 5135, which continue this language, as does the present Wills Act of June 7, 1917, § 21, P. L. 403, in force when this testator died. In Walker v. Hall, 34 Pa. 483, the testator's will gave his

2 D. & C.

entire estate to his wife, 'having the utmost confidence in her integrity and belief that should a child be born to us she will do the utmost to rear it to the honor and glory of its parents.' A child was born, and the Supreme Court held that, as it was not provided for in the will, although its birth was clearly in contemplation of the testator, the will was revoked *pro tanto*. The court laid stress upon the language of the Act of 1764, and the later acts which changed the phraseology of the earlier Act of 1748, above referred to, and, instead of requiring simply the naming of the child, made it necessary that he should be provided for. So, in the stronger case of Hollingsworth's Appeal, 51 Pa. 518, the testator gave his entire estate to his wife, and provided that if he should leave any children, he appointed his wife their guardian, committing their maintenance, education and future provision to her, adding, 'which guardianship I intend and consider to be a suitable and proper provision for such child or children.' He left two children, one of them born nine days after the making of his will, and the Supreme Court said: 'This is clearly no provision for his children, such as is contemplated by our Wills Act and the whole policy of the law.'

"Now, a will which, as in the present case, expresses an intention to disinherit after-born children is certainly not making a provision for them. It does exactly the opposite thing; and if the present case were to be decided merely upon the authority of the above decisions, it seems clear beyond peradventure that the will was revoked by the birth of children.

"In Willard's Estate, 68 Pa. 327, the testator, after life estates to his mother and wife, gave the remainders to his heirs-at-law, share and share alike, to those heirs 'who shall be living or entitled to be represented in said estate.' A child born to him after the execution of the will was held not to be provided for within the meaning of the Act of 1833, because it was given merely an estate in remainder. Judge Sharswood alludes to the difference between the Acts of 1748-49 and the subsequent acts, and said: 'It is probable that the intention of the alteration was two-fold: First, that merely naming without providing for after-born children would not be sufficient, as was the case in Walker *v.* Hall, 10 Casey, 483; and, secondly, if the after-born child would take with the other children under general words, without being specially named or described, such devise or bequest would be a provision. Here, however, there was in effect no present provision whatever. For all the purposes of education and support, and that for an indefinite period, this son is left entirely dependent upon his mother, unless, indeed, by a sale of his reversionary interest.' The next case of any importance, so far as the present question is concerned, is Newlin's Estate, 209 Pa. 456, which is relied upon by the learned counsel of Marian Scull Biddle. The testator, having no children, but expecting the birth of one, made his will, by which he gave certain portions of his estate to trustees in trust for his wife, and on her death or remarriage in trust for his children, as a class, on certain trusts. Chief Justice Mitchell held that the will was not revoked, and in the course of his opinion critically examined the cases above referred to. The ground and scope of his own decision appears from the following extracts from his opinion: 'The statute makes no requirement of adequacy, and gives courts no authority over that subject. What it does require is that the testator shall make provision, to wit, such provision as he deems proper, for the unborn child, and shall do it in such a way as to show that he intends it as a provision. Beyond this the child unborn has no greater rights than the child or children living. . . . It appears to have been universally conceded that an actual provision, clearly intended for the after-born child, will satisfy the statute, no matter how small the provision is. No case can be found to controvert this position, and,

this being once conceded, the conclusion is unavoidable that the only test of what the statute requires is the intention of the testator. . . . The statute, as said by Sharswood, J., in Willard's Appeal, 68 Pa. 327, makes no requirement that the child shall be fully or equally provided for. That is left to the discretion of the parent, as in the case of his living children. All that it does require is that he shall have the child in mind and shall make clear his intention that the will shall apply to it. Any provision which does that is sufficient, and the inquiry whether it is large or small, equal or unequal, vested or contingent, present or future, is irrelevant and outside of the jurisdiction of the courts, except so far as it tends to throw light on the question of intention.'

"Newlin's Estate was followed in Randall v. Dunlap, 218 Pa. 210, in which the testatrix, after making provision for her children surviving her and issue of deceased children, declared in her will 'that after-born children are herein provided for.' It was held that this was a sufficient provision; and Schaper v. Pittsburgh Coal Co., 266 Pa. 154, is to the same effect.

"I can find no other relevant decision of the Supreme Court, but in the Orphans' Court, Leisenring's Estate, 5 Dist. R. 232; Irons's Estate, 13 Dist. R. 338, and Leyrer's Estate, 17 Pa. C. C. Reps. 132, and in the Superior Court, Conn's Estate, 65 Pa. Superior Ct. 511, may be mentioned incidentally. Counsel referred, also to the decision of the Orphans' Court of Allegheny County in Zug's Estate, 57 Pitts. L. J. 176, in which the testator, anticipating the birth of a child, stated, in a codicil to his will, that his wife was the sole heir. The court was of the opinion that, under Walker v. Hall, 34 Pa. 483, and Hollingsworth's Appeal, 51 Pa. 518, the will must be held to be revoked, but expressed the opinion that Newlin's Estate 'marked a new road,' and held that the will was not revoked. I do not think that Newlin's Estate goes to that length. True it is that the court said that all the statute requires is that the testator 'shall have the child in mind and make clear his intention that the will shall apply to it;' but the court went on to say, what is not quoted in Zug's Estate, 'any provision which does that is sufficient, and the inquiry whether it is small or large, equal or unequal, vested or contingent, is irrelevant and outside of the jurisdiction of the courts, except so far as it tends to throw light on the question of intention.' But where the will not only makes no provision at all for an after-born child, but even expressly says that the testator disinherits such child, how can such a will be said to provide for the child in the language of the act of assembly, in which there are significantly used the words 'not provided for' instead of 'not named?' Newlin's Estate does not go so far as that, and could not without overruling the prior cases of Walker v. Hall, and especially Hollingsworth's Appeal, in both of which the intention of the testator clearly appeared to give his entire estate to his wife, even if a child or children should be thereafter born, whose possible birth was expressly referred to. These cases show that the intention of the testator is not enough to satisfy the statute; there must be some provision made for the children, however slight, its amount and nature being determined by the testator. I will only add that I have examined numerous decisions in other states, but it is unnecessary to refer to them, as the wording of the various statutes is far from uniform. I do not find any, however, that would lead me to a different opinion. I, therefore, conclude that the will of Robert Biddle, 2nd, fails, under the law of Pennsylvania, so far as the real estate is concerned, to provide for his two after-born children. As to them he died intestate, and their shares, viz., one-fourth of two-thirds, or one-sixth for each, should be awarded to the guardian of their estates when duly

2 D. & C.

appointed and qualified, or if they are residents of New Jersey and have a guardian there appointed, such guardian will be entitled to receive their shares upon compliance with section 58 (g) of the Fiduciaries Act of 1917."

*Joseph T. Bunting*, for exceptions; *John Stokes Adams*, contra.

GUMMEY, J., Dec. 26, 1922.—The question we are called upon to decide is whether a testator, by explicit language in his will, may disinherit his children born after its date, notwithstanding section 21 of the Wills Act of June 7, 1917, P. L. 403, which directs that such after-born child "not provided for" in the will shall take such share of the testator's estate as they would have taken had he died without a will.

The auditing judge, in an opinion in which he reviews the cases, held that, as the will under discussion made no affirmative provision for the testator's after-born children, they were entitled to the benefits conferred by the act, and his conclusion is the logical result of the reasoning found in the authorities.

The exceptions are dismissed and the adjudication is confirmed absolutely. LAMORELLE, P. J., did not sit.